IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AGNES LAURIE BARRINGER,

               Plaintiff,                                         CV 09-068-AC

        v.                                        FINDINGS AND
                                                      RECOMMENDATION

CLACKAMAS COUNTY, DEPUTY A. DAVIS,
personally, DEPUTY JILL MCCLOUD, personally,
and DEPUTY DALTON, personally,

               Defendants.

Acosta, Magistrate Judge:

*Findings and Recommendation*

      Agnes Laurie Barringer ("Barringer") filed a Second Amended Complaint ("SAC") pursuant

to 42 U.S.C. § 1983, and Oregon state law, against Clackamas County ("County") and three

individually named deputies in their individual capacities (collectively "Deputies"). In her SAC,

Barringer alleges constitutional violations arising from her citation for contempt of court and

subsequent events in a holding cell at the Clackamas County Jail.  Specifically, Barringer alleges: (1) a wrongful "tackling" by court security in violation of the Fourth or, alternatively, the Eighth Amendment (Eight Amendment Cause of Action – First Claim for Relief); (2) a wrongful "lifting and slamming" in her cell in violation of the Eighth Amendment (Eighth Amendment Cause of Action – Second Claim for Relief); (3) a wrongful digital cavity search in violation of the Eighth Amendment (Eighth Amendment Cause of Action – Third Claim for Relief); (4) a negligent hiring, training, supervision and retention of the Deputies by the County in violation of Oregon state law (Negligence Cause of Action); (5) a wrongful "tackling" by court security constituted battery (Battery Cause of Action – First Claim for Relief); (6) a wrongful "lifting and slamming" in her cell constituted battery (Battery Cause of Action – Second Claim for Relief); and, (7) a wrongful digital cavity search constituted battery (Battery Cause of Action – Third Claim for Relief).  (Pl.'s Sec. Am. Compl. 3-5.)

Barringer filed an Amended Motion for Partial Summary Judgment seeking an entry of judgment against the County and Deputy Alana Davis for "civil negligence liability," as well as judgment against Deputy Davis for "Fourth Amendment personal liability."  (Pl.'s Am. Mot. Partial Summ. J. 1.)  The County and Deputy Davis contend Barringer is unable to establish her claims as a matter of law and, therefore, summary judgment is not warranted.  For the reasons set forth below, Barringer's Amended Motion for Partial Summary Judgment should be denied.

*Factual Background*

The Policy statement in the Clackamas County Sheriff's Office Use of Force Guidelines (section 25.50.3) states, in part:  "At no time will force be used to punish an inmate."  (Leonard R. Berman Decl. Ex. 5 at 1, May 17, 2010.)  The Procedures clause (section 25.50.4) states, in part:

"Force shall not be used in a malicious or sadistic manner for the purpose of causing harm." (Berman Decl. Ex. 5 at 1.)

Barringer alleges in her declaration that, prior to being lodged in the holding cell, she "felt" she had "been mistreated and handled roughly by Alana Davis and others." (Agnes Laurie Barringer Decl. ¶ 2, May 14, 2010.) Barringer offers no basis or explanation for her belief.

Barringer claims she tried to call for help, but the phone in her holding cell was inoperative. (Barringer Decl. ¶ 3.) In response, Barringer slammed the phone on the wall. (Barringer Decl. ¶ 3.) Barringer states "she did not misbehave physically at any other time before or after the phone incident." (Barringer Decl. ¶ 3.) However, there is evidence in the record to refute her claim of compliance. For example, a "Custody Memorandum" signed by Clackamas County Circuit Judge Jeffrey S. Jones states: "Defendant, Ms. Barringer, used abusive language and refused to leave [the] courtroom after being warned to leave [the] courtroom or be held in contempt of court. Held in contempt under ORS 33.096 & 33.015(2)." (Edward S. McGlone Decl. Ex. 9, June 16, 2010.) The record also includes a copy of an "Oregon Uniform Citation and Complaint," signed by Officer Michael Helmstadt, charging Barringer with "Resisting Arrest" and "Harassment" for her conduct during her escort from the courtroom. (McGlone Decl. Ex. 10.) Finally, a "Clackamas County Jail Misconduct Report" details numerous rules violations by Barringer for the time period in which she alleges good behavior. (McGlone Decl. Ex. 11.)

Barringer further insists once she heard a command to stop slamming the phone "she immediately complied and sat herself peacefully on the bench/bed." (Barringer Decl. ¶ 4.) However, her testimony is contradicted by one of her own exhibits, a compact disc of the video from the Clackamas County closed-circuit television camera located in Barringer's holding cell. (Berman

Decl. Ex. 2.)  The video reveals that at 21:54:03 hours Barringer was uncuffed and the Deputies started to exit the cell.  Before the Deputies leave the cell, Barringer gets up and heads for the telephone on the wall.  She picks up the handset at 21:54:09 hours and swings it against the telephone approximately 42 seconds later, at 21:54:51 hours.  The video shows Barringer beginning to swing the handset again at 21:54:54 hours, but abruptly hides it behind her back.  At 21:55:01 hours, she again hits the handset against the telephone and kicks the wall 22 seconds later.  At 21:55:35 hours, Barringer is seen slamming the handset of the phone against the telephone one last time.  (McGlone Decl. Ex. 13; Berman Decl. Ex. 2.)

Barringer claims following the telephone incident she was fully compliant, neither misbehaving nor posing a threat of harm, for at least eight seconds.  In fact, Barringer states she sat "passively" on the cell bunk with her hands near or on her lap.  (Barringer Decl. ¶ 6.)  Apparently this contention is based on the video from the Clackamas County closed-circuit television.  (Berman Decl. Ex. 2)  According to Barringer, the video establishes that between 21:55:40 until 21:55:48, Barringer "demonstrated no misconduct requiring apprehension and chaining per the six criteria listed in the Use of Force Policy."  (Pl.'s Concise Statement Facts ¶ 17; Berman Decl. Ex. 2.)

The County and Deputy Davis dispute Barringer's account of the events and allege she ceased slamming the phone and sat down only because the Deputies were entering her cell as part of the restraint process.  (Alana Davis Dep. 36:6-23, Feb. 24, 2010.)[1]  A review of the video reveals, however, Barringer stops slamming the phone at 21:55:39 hours and begins to sit down one second later (21:55:40).  Two seconds later (21:55:42), Barringer is fully seated, but less than one second

---

[1]Unless otherwise specified, the court's citations to Deputy Davis' deposition testimony refer to Exhibit 7 of the McGlone declaration.

later (21:55:43) the first deputy is seen entering her cell to begin the restraint process.  (McGlone Decl. Ex. 13; Berman Decl. Ex. 2.)  Thus, Barringer's characterization that she was fully compliant for eight seconds prior to being restrained is disputed.  Moreover, Barringer attempts to attribute the "eight seconds" of compliance as a fact conceded to and adopted by Deputy Davis.  From a reading of Deputy Davis' deposition testimony, however, it appears Barringer's counsel formulated the "eight second" theory and Deputy Davis simply adopted as accurate that characterization when she responded to questions posed by Barringer's attorney. (Davis Dep. 5:1-18, 6:24-10:7 (Berman Decl. Ex 3).)

The parties dispute whether Barringer received any warning to stop slamming the handset against the phone base.  For example, Barringer stated in her declaration that "[a]t no time did [she[ receive any warning" she would be forcibly restrained if she refused to stop.  (Barringer Decl. ¶ 5.)  Although Deputy Davis testified she could not recall whether Barringer was given a warning prior to being restrained (Davis Dep. 5:19-6:4 (Berman Decl. Ex. 3)), she did testify Barringer was asked several times to stop slamming the phone and to have a seat.  (Davis Dep. 37:15-20.)

Despite admitting she "slammed the phone on the wall," Barringer asserts she made no threatening or violent remarks or gestures toward anyone during the time she was housed in the Clackamas County Jail.  (Barringer Decl. ¶ 7.)  Barringer further alleges she was forcibly chained to her bunk and the floor for almost two hours.  (Barringer Decl. ¶ 8; Berman Decl. Ex. 2.)  The County and Deputy Davis counter Barringer was grabbed because she refused to sit on the floor as requested.  Moreover, they allege Barringer was handcuffed only to the bed.  (Berman Decl. Ex. 2.)  For purposes of summary judgment only, however, the County and Deputy Davis do not dispute

Barringer's statement that she felt pain and discomfort in her torso, back and arms and she cried and needed to use the toilet during the two hours she was restrained. (Barringer Decl. ¶ 9.)

Barringer asserts that once she "misbehaved" with the phone, there was nothing she could have done to avoid being chained to the bed. (Davis Dep. 6:5-10.) Deputy Davis testified, however, that she forcibly restrained Barringer based on her earlier conduct and Deputy Davis' training, experience, and her belief there would be additional misconduct. (Davis Dep. 11:21-14:13.). When asked whether she "speculated" Barringer would continue her misconduct, Davis responded "correct". (Davis Dep. 13:22-24.) Deputy Davis believed there was nothing to prevent Barringer from getting back up and again slamming the phone. (Davis Dep. 37:5-14.) Davis explained she restrained Barringer to bring the incident under control. (Davis Dep. 17:17-24.)

Barringer also charges she was injured when Deputy Davis gratuitously shoved her head and body down for sixty seconds while she was handcuffed to the bed. According to Barringer, she posed no threat of harm to Deputy Davis or anyone else. (Barringer Decl. ¶ 10; Berman Ex. 2.) A review of the video from that day shows Barringer's head is often obscured from view. When her head is visible on the video, Deputy Davis' hands are placed on Barringer's back and neck or shoulder, rather than her head. (Berman Decl. Ex. 2.)

Barringer states in her declaration she did not resist being transported through the jail hallway and Deputy Davis "grabbed [her] hair and handled her roughly" during the transport without justification. (Barringer Decl. ¶¶ 11-12; Berman Ex. 2.) The County and Deputy Davis contend Barringer twisted away from the officers during the transport. (McGlone Decl. Ex. 12; Berman Decl. Ex. 2.) In response, Deputy Davis grabbed Barringer's hair with one hand to control her. (McGlone Decl. Ex. 12; Berman Decl. Ex. 2; Davis Dep. 108:1-109:22.)

The parties disagree whether a "Use of Force" report was required pursuant to the Clackamas County Sheriff's Office Use of Force Policy. Barringer charges that instead of completing a "mandatory" force report, as required by the Policy, Davis filed a misconduct report against Barringer. (Berman Decl. Ex. 4 and 5.) According to Deputy Davis, however, no Use of Force report was required under the circumstances because "restraints" do not qualify as force. (Davis Dep. 32:21-33:9, 34:9-35:25.)

Barringer alleges in her declaration that "[s]ince being folded down by Alana Davis, [she has] experience[d] unprecedented pancreatic problems, and [has] lost significant weight, exceeding forty pounds." (Barringer Decl. ¶ 13.)

### Legal Standard

Summary judgment is appropriate "if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### Discussion

Barringer moves the court for an entry of judgment on the following claims: (1) a section 1983 claim against Deputy Davis for excessive force in violation of the Fourth Amendment or, alternatively, the Eighth Amendment; (2) a state law negligence claim against Deputy Davis and

respondeat superior liability against the County; and (3) a claim for negligent hiring, training and supervising against the County. .

I.      Section 1983 Claim v. Deputy Davis

To analyze a section 1983 claim against a police officer the court should proceed in a two-part analysis.  First, the court must view the claimed constitutional violation in the light most favorable to the injured party and inquire whether the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part on other grounds by Pearson v. Callahan,* ---U.S. ----, 129 S.Ct. 808, 818 (2009).  If the court finds there was no constitutional violation, there is no further inquiry and judgment is entered for the officer.  If, however, the court determines there was a violation, it must proceed to the question of qualified immunity.  Officers are protected by qualified immunity, which is "an immunity from suit rather than a mere defense to liability." *Pearson*, 129 S.Ct. at 815.  When an officer asserts immunity, the court must dismiss the case unless the officer knew her conduct was "clearly unlawful." *Saucier*, 533 U.S. at 202; *see also Pearson*, 129 S.Ct. at 816 ("the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct").  Courts may determine which part of the analysis to address first. *See Pearson,* 129 S.Ct. at 818 ("while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory").  In this case, the court will determine first whether a constitutional violation occurred.

Barringer seeks an entry of judgment on her claim for "Fourth Amendment personal liability for A. Davis for in jail and in cell constitutional torts."  (Pl.'s Am. Mot. Summ. J. 1.)  Barringer relies, however, upon both the Fourth and Eighth Amendments to challenge the Deputy Davis' conduct here.  Clearly, claims of excessive force "in the course of an arrest, investigatory stop, or

8 - FINDINGS AND RECOMMENDATION                                            [LB]

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Graham v. Connor,* 490 U.S. 386, 395 (1989).  However, post-conviction excessive force claims, such as Barringer's, should be considered under the Eighth Amendment. *Id* at 395 n.10 ("After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" (*quoting Whitley v. Albers,* 475 U.S. 312, 327 (1986))).

Judge Jones, a Clackamas County Circuit Judge, summarily found Barringer in contempt of court and sentenced her to seven days in the Clackamas County Jail. Barringer was convicted of contempt in violation of Or. Rev. Stat. § 33.096.  In her SAC, Barringer alleges excessive force by the Deputies occurring during her first day of detention.  Thus, Barringer was a prisoner in custody of the Clackamas County Sheriff's Department pursuant to Judge Jones' contempt sanction and the treatment received by Barringer during her seven-day sentence is governed by the Eight Amendment. *See, e.g. Qader v. New York*, 396 F.Supp. 2d 466, 470 (S.D.N.Y. 2005) ("[B]ecause plaintiff had already been found guilty of criminal contempt when she come into custody of the New Rochelle Police Department, her claim for the denial of medical treatment must be analyzed under the Eighth Amendment's cruel and unusual punishment clause."); *Sharp v. Kelsey*, 918 F.Supp. 1115, 1122-23 (W.D. Mich. 1996) ("When Judge Hocking summarily convicted Ms. Sharp of criminal contempt in front of Officer Baird and ordered him to take her to jail . . .  Ms. Sharp was thereafter subject to the protections of the Eighth Amendment and not the Fourth or Fourteenth Amendments.")

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. CONST. AMEND. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. *Whitley v. Albers,* 475 U.S. 312,

9 - FINDINGS AND RECOMMENDATION                                    [LB]

319 (1986).  *See also Ingraham v. Wright,* 430 U.S. 651, 670 (1977); *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley,* 475 U.S. at 319.  The issue for the court is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21.  In *Whitley,* the Supreme Court laid out five factors to determine whether the force used was wanton and unnecessary: the extent of injury suffered by an inmate; the need for application of force;  the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of the forceful response.  475 U.S. at 321.

Barringer contends Deputy Davis violated the Eight Amendment prohibition against cruel and unusual punishment when she "forcibly grabbed and chained [Barringer] to the bed and floor for nearly two hours"; "gratuitously shov[ed] her head and body down as she was handcuffed; and "grabbed [] Barringer's hair and handled her roughly in transport."  (Pl's. Mem.  Partial Summ. J. 6.).  Barringer's burden on summary judgment is formidable.  Barringer must show, through evidentiary facts, there is no dispute that Deputy Davis applied force "maliciously and sadistically for the very purpose of causing harm." *Whitley* 475 U.S. at 320-21.  Barringer argues the Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730 (2002), should mandate a finding Deputy Davis is liable for an Eight Amendment violation here. In that case, Larry Hope alleged he was subjected to cruel and unusual punishment when prison guards twice handcuffed him to a hitching post to sanction him for disruptive conduct. Before analyzing the legal question before it, the Court outlined the relevant facts:

In 1995, Alabama was the only State that followed the practice of chaining inmates to one another in work squads. It was also the only State that handcuffed prisoners to "hitching posts" if they either refused to work or otherwise disrupted work squads. Hope was handcuffed to a hitching post on two occasions. On May 11, 1995, while Hope was working in a chain gang near an interstate highway, he got into an argument with another inmate. Both men were taken back to the Limestone prison and handcuffed to a hitching post. Hope was released two hours later, after the guard captain determined that the altercation had been caused by the other inmate. During his two hours on the post, Hope was offered drinking water and a bathroom break every 15 minutes, and his responses to these offers were recorded on an activity log. Because he was only slightly taller than the hitching post, his arms were above shoulder height and grew tired from being handcuffed so high. Whenever he tried moving his arms to improve his circulation, the handcuffs cut into his wrists, causing pain and discomfort.

On June 7, 1995, Hope was punished more severely. He took a nap during the morning bus ride to the chain gang's worksite, and when it arrived he was less than prompt in responding to an order to get off the bus. An exchange of vulgar remarks led to a wrestling match with a guard. Four other guards intervened, subdued Hope, handcuffed him, placed him in leg irons and transported him back to the prison where he was put on the hitching post. The guards made him take off his shirt, and he remained shirtless all day while the sun burned his skin. He remained attached to the post for approximately seven hours. During this 7-hour period, he was given water only once or twice and was given no bathroom breaks. At one point, a guard taunted Hope about his thirst. According to Hope's affidavit: "[The guard] first gave water to some dogs, then brought the water cooler closer to me, removed its lid, and kicked the cooler over, spilling the water onto the ground."

*Id.* at 733-35 (internal footnotes and citations omitted). The Court determined Hope's allegations stated a claim for violation of the Eighth Amendment and reversed the Eleventh Circuit's finding that the prison guards were entitled to qualified immunity. *Id.* at 736-38.

Barringer's reliance on the decision in *Hope* is unpersuasive. Even assuming all of Barringer's allegations are true, the facts in *Hope* are significantly more egregious. *See, e.g., Walters v. Curtin,* No. 1:08-cv-688, 2008 WL 4756022, at *1 (W. D. Mich. Oct. 23, 2008) (recognizing the inapplicability of *Hope* where prisoner alleged only that he had been deprived of bathroom access for 90 minutes). Furthermore, the question before the Court in *Hope* was, in part, whether Hope's

allegations stated an Eighth Amendment claim. By contrast here, Barringer asks the court to enter summary judgment, i.e., finding as a matter of law Deputy Davis violated the Eighth Amendment.

The court declines to do so because most of the salient facts are in dispute. For example, Barringer alleges that with the exception of one brief incident in which she "slammed the phone on the wall," she "did not misbehave physically at any other time before or after." (Barringer Decl. ¶ 3.) She further alleges that despite her fully compliant behavior she was "forcibly grabbed and chained to the bed and floor for nearly two hours." (Barringer Decl. ¶ 8; Berman Decl. Ex. 2.) Barringer also claims while she was restrained, Davis hurt her "by gratuitously shoving her head and body down for sixty seconds [while] she was handcuffed to the bed and pos[ing] no threat." (Barringer Decl. ¶ 10; Berman Decl. Ex. 2.) Finally, Barringer insists Deputy Davis, without justification, grabbed her hair and handled her roughly during transport. (Barringer Decl. ¶ 12.)

In contrast, the County and Deputy Davis allege Barringer acted out in court earlier in the day, which resulted in her contempt conviction and jail sentence. (McGlone Decl. Ex. 9.) Upon being escorted from the courtroom, Barringer was again uncooperative to the extent she was charged with Resisting Arrest and Harassment. (McGlone Decl. Ex. 10.) She eventually entered a guilty plea to the Harassment charge. The County and Deputy Davis also maintain Barringer disobeyed Deputy Davis' lawful order to present her identification card and responded by swearing at her. There are also allegations Barringer misbehaved when she failed to cooperate in her transfer from general housing to the booking isolation cell. (McGlone Decl. Ex. 11.)

Next, the County and Deputy Davis contend Barringer stopped slamming the phone and sat down only because deputies were entering her cell as part of the restraint process. Deputy Davis testified restraints are not a use of force and were applied in this instance to gain Barringer's

compliance with repeated requests to stop slamming the phone and have a seat. (McGlone Decl. Ex. 13; Davis. Dep. 35:4-37:20.) Deputy Davis explained she held Barringer's head down during the restraint process because Barringer was very angry and unpredictable. (Davis Dep. 95:2-13.) Deputy Davis was attempting to prevent Barringer from spitting at or head butting the Deputies or injuring herself. (Davis Dep. 95:2-13.) As for Barringer's allegations of mistreatment during her transfer, Deputy Davis testified she held Barringer's hair, rather than her elbow, during the escort because Barringer was resisting. (McGlone Decl. Ex. 12; Davis. Dep. 109:1-22.) Finally, Deputy Davis generated a misconduct report rather than a Use of Force report because under the County policies restraining Barringer was not a use of force. (Davis Dep. 32:21-35:10.)

Nor is the record well-developed concerning the fact of or extent of Barringer's injuries resulting from her alleged mistreatment. In fact, the only injury evidence in the record is a single statement by Barringer in her declaration: "Since being folded down by Alana Davis, I have experience[d] unprecedented pancreatic problems, and have lost significant weight, exceeding forty pounds."[2] (Barringer Decl. ¶ 13.) There is no evidence presented that Barringer sought or received medical treatment for injuries sustained from Deputy Davis. While the absence of a serious injury does not inherently preclude Eight Amendment liability, "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *See Wilkins v. Gaddy*, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (internal citations and quotation marks omitted).

---

[2]In her SAC, Barringer also alleges Deputy Davis "caus[ed] her bruising and swelling to her arms. . . ." (Second Am. Compl. ¶ 4.) There is no evidence in the record to support this allegation.

Viewing the evidence in a light most favorable to Deputy Davis, the nonmoving party, a jury reasonably could conclude she acted reasonably under circumstances in a good-faith effort to maintain or restore disciple and was not malicious and sadistic. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (*en banc*) (institutional security is legitimate penological interest). Based on the record before the court, Barringer is unable to show as a matter of law that Deputy Davis acted maliciously or sadistically with an intention to harm her. *See Hudson,* 503 U.S. at 4, 8 (finding cognizable claim where officer "punched" an inmate posing no threat "in the mouth, eyes, chest, and stomach while [another officer] held the inmate in place and kicked and punched him"); *Felix v. McCarthy,* 939 F.2d 699, 701-02 (9th Cir. 1991) (finding cognizable claim where officers without provocation twice "threw" an inmate posing no threat across the hall and against a wall). Accordingly, summary judgment against Deputy Davis for the claim of excessive force in violation of the Eighth Amendment should be denied.[3]

II.    <u>State Law Negligence Claim v. Deputy Davis and The County</u>

Barringer also seeks an entry of judgment on her claim for common law negligence against Deputy Davis, and respondeat superior liability for the County. Specifically, Barringer contends Deputy Davis is liable under a theory of common law negligence for, among other things, "chaining [Barringer] to the bed and floor and pushing her head and torso down toward the ground." (Pl.'s Mem. Summ. J. 8.) Barringer further argues that under the doctrine of respondeat superior Clackamas County is also liable to her for Deputy Davis' conduct. Barringer maintains Deputy Davis was acting under the course and scope of her employment at all times and, therefore, the

---

[3]The court need not reach Barringer's argument that Deputy Davis is not entitled to qualified immunity from her actions here. Deputy Davis has not asserted qualified immunity in this case, nor has the court found a constitutional violation as a matter of law.

County is liable for her injuries. (Pl.'s Mem. Summ. J. 8-9.) Relying on *Mazzaferro v. Albany Motel Enterprises, Inc.*, 127 A.D.2d 374, 515 N.Y.S.2d 631 (1987), the County and Deputy Davis argue an intentional use of force claim such as Barringer's cannot constitute negligence but, rather, is limited to a claim for battery. *See also Kasnick v. Cooke,* 116 Or. App. 580, 583, 842 P.2d 440 (1992) ("As a matter of law and fact, there is no such thing as a negligent fist fight.")

As a threshold matter, in Oregon, there can be no common law tort claim against an individual public defendant. Under the Oregon Tort Claims Act ("OTCA"), OR. REV. STAT. §§ 30.260-300, a plaintiff seeking to recover for a municipal officer's tortious conduct must name the municipality, not the individual officer, as defendant. *See* OR. REV. STAT. § 30.265(1). "The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only." *Id.* "For an act to fall within the scope of employment, it must be of a kind which the employee was hired to perform, must have occurred within authorized time and space, and the employee must have been motivated, at least in part, by a purpose to serve [the employer]. *Haase v. Eugene,* 85 Or. App. 107, 110-11, 735 P.2d 1258 (1987).

Here, Barringer asserts her state negligence claim against both Deputy Davis, individually, and the County. She acknowledges (indeed argues) that Deputy Davis acted within the course and scope of her employment at all times. In fact, Barringer argues, unequivocally, in both her opening memorandum in support of partial summary judgment and in her reply brief that Deputy Davis was acting within the scope of her employment with Clackamas County. (Pl.'s Mem. Summ. J. 8-9; Pl.'s Reply 3.) As such, Barringer may seek relief only under the OTCA and there is no common law

claim against Deputy Davis, individually.  Thus, the County is the only proper defendant for Barringer's state law negligence claim. *See Comfort v. Jackson County*, No. CV 09-3060-CL, 2010 WL 2817183, at *3-5 ("[R]elief for common law claims against individuals must be brought under the OTCA and not common law.");  *Hadley v. City of Beaverton*, No. CV 09-022-ST, 2010 WL 1257609, at *13 (D. Or. Feb. 16, 2010) ("As long as an employee was acting within the course and scope of his employment at the time the allegedly tortious conduct occurred, the only proper claim is against the public body itself.")  Accordingly, Barringer's request for summary judgment against Deputy Davis, individually, on a theory of common law negligence should be denied and, indeed, her negligence claim against Deputy Davis should be dismissed because Barringer may not maintain a cause of action against Deputy Davis.  *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under FED. R. CIV. P. 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

The court turns next to Barringer's request for an entry of judgment against the County for Deputy Davis' alleged negligent treatment of her.  In this District, "a state common-law claim of negligence may be maintained separately from a § 1983 claim only when the negligence claim is based on facts that are different from the facts on which the § 1983 claims are based." *Whitfield v. Tri-Metropolitan Transp. Dist.,* No. CV 06-1655-HA, 2009 WL 839484, at *11 (D. Or March 30, 2009); *see also Shilo v. City of Portland,* No. CV 04-130-AS, 2005 WL 3157563, at *1 (D. Or. Nov. 22, 2005); *accord Rodriguez v. City of Portland,* No. CV 09-850-KI, 2009 WL 3518004, *2 (D. Or. October 21, 2009).  When a plaintiff alleges both a section 1983 claim and a negligence claim, the court must determine whether the underlying conduct for those claims is identical.  Barringer's

negligence claim may survive only if it is premised upon facts distinct from those underlying the section 1983 claim.

Here, Barringer alleges the County (through Deputy Davis) was negligent by: (1) chaining her to the bed and floor and pushing her head and torso to the ground; and (2) grabbing her by the hair during transport. These allegations of negligence are premised upon the identical conduct that supports Barringer's section 1983 claim for cruel and unusual punishment. There is no other evidence before the court at this stage, i.e., summary judgment, to indicate Barringer's negligence claim is premised upon independent conduct that created an unreasonable foreseeable risk of harm to Barringer's protected interest. *Compare Rodriguez*, 2009 WL 3518004, at *2 (dismissal of a negligence claim premised upon facts closely related to those underlying a section 1983 claim is inappropriate at the pleading stage). Accordingly, Barringer's request for an entry of judgment against the County under the doctrine of respondeat superior should be denied and that claim should be dismissed. *See Omar*, 813 F.2d at 991.

III.    State Law Negligent Hiring, Training and Supervision Claim v. The County

Finally, Barringer requests an entry of judgment against the County on her claim for negligent hiring, training and supervision. According to Barringer, "[w]hen [Deputy] Davis admitted that no policy authorized chaining [her] to the bed and floor and pushing her head and torso down toward the ground, a mandatory inference is that Clackamas was negligent in its hiring, training and supervision of . . . [D]eputy [Davis]." (Pl.'s Mem. Summ. J. 9.) In addition, Barringer argues the Clackamas County Use of Force Policy is analogous to a public ordinance and the court should find the County liable for negligence *per se*. *See McApline v. Multnomah County*, 131 Or. App. 136, 144, 883 P.2d 869 (1994). The court will address both of these arguments.

A claim for negligent supervision under Oregon law requires Barringer to show the County had knowledge of Deputy Davis' allegedly dangerous propensities. See *Whelan v. Albertson's, Inc.,* 129 Or. App. 501, 507, 879 P.2d 888, 892 (1994); *Carr v. U.S. West Direct Co.,* 98 Or. App. 30, 37, 779 P.2d 154, 157-58 (1989). In other words, in light of what the County knew or should have known about Deputy Davis, the County reasonably could foresee an inadequately supervised Deputy Davis would engage in the kind of conduct that ultimately harmed Barringer. *See, e.g., M.N.O. v. Magana,* No. CV 03-6393-TC, 2006 WL 559214, at *20 (D. Or. March 6, 2006); *accord Hadley*, 2010 WL 1257609, at *15. The question of foreseeability, however, "generally presents an issue of fact, and, therefore, is not a likely candidate for summary judgment." *Cunningham v. Happy Palace, Inc.,* 157 Or. App. 334, 337, 970 P.2d 669, 671 (1998).

In support of her claim for inadequate supervision Barringer simply restates her allegations that Deputy Davis lacked the authority to chain Barringer to her bed, push her head and torso toward the ground and to grab her hair during transport. Based on these allegations, Barringer summarily concludes there is "a mandatory inference [] that Clackamas was negligent in its hiring, training and supervision of [] [D]eputy [Davis]." (Pl.'s Mem. Summ. J. 10.)

There is simply no evidence in the record, however, to conclude as a matter of law the County reasonably could have foreseen Deputy Davis would engage in the type of misconduct alleged by Barringer here. In fact, Barringer submitted evidence that in a previous incident, involving a different prisoner, Deputy Davis tolerated multiple instances of misconduct prior to restraining the prisoner. (Berman Decl. Ex. 8; Pl.'s Mem. Summ. J. 9.) This evidence is directly contrary to an assertion that Deputy Davis had dangerous propensities of which the County was aware. Barringer failed to present any evidence the County knew Deputy Davis may be inclined to

act violently toward prisoners or engage in otherwise dangerous behavior.  Nor is there any evidence the County received prior complaints about Deputy Davis' alleged propensity to use excessive force or to employ cruel and unusual punishment when interacting with detainees or prisoners. Accordingly, Barringer's request for summary judgment against the County on her claim fo negligent hiring, training and supervision should be denied.

Lastly, the court considers Barringer's argument the County is liable under a theory of negligence *per se* based on Deputy Davis' alleged violation of the County's Use of Force Policy. Negligence *per se,* is not a distinct cause of action but, rather, a negligence claim based upon a violation of a standard of care set out by statute or rule.  *Gattman v. Favro,* 306 Or. 11, 15 n.3, 757 P.2d 402 (1988).  As the Oregon Supreme Court explained:

> When a plaintiff (or a defendant seeking to prove negligence on plaintiff's part) invokes a governmental rule in support of that theory, the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of law.

*Shahtout v. Emco Garbage Co,* 298 Or. 598, 601, 695 P.2d 897 (1985)

To state a claim under Oregon law for negligence *per se*, plaintiff must show, among other things, that defendant violated a statute or ordinance.  *See, e.g., Ettinger v. Denny Chancler Equipment Co., Inc.,* 139 Or. App. 103, 107, 910 P.2d 420 (1996).  In addition, the application of negligence per se based on a violation of an administrative regulation, rather than a statute, is proper so long as two conditions are satisfied.  First, the regulation must, in fact, support a private right of

action under the four-part test prescribed in *McAlpine,* 131 Or. App. 136.  Next, even if the regulation meets the factors set froth in *McAlpine*, its terms permitting the imposition of private liability must not be *ultra vires.  Ettinger*, 139 Or. App. at 107.

Barringer urges this court to construe an internal Clackamas County policy as a regulation or ordinance to satisfy the requisite elements of *McAlpine*.  Barringer offers no authority or even analysis in support of her contention the Clackamas County Use of Force Policy, an internal municipal guideline, is sufficient to fix a legal standard of conduct and create a civil cause of action under Oregon law.  Nor was the court able to locate any authority to justify the promulgation here of a new Oregon law by extending *McAlpine*, and its progeny, to include internal policy statements by local governmental agencies.  In the absence of relevant precedent, the court declines to create a negligence *per se* cause of action for Barringer grounded in the County's Use of Force policy.  Accordingly, Barringer's request for an entry of judgment against the County under a theory of negligence *per se* should be denied.

*Conclusion*

Based on the foregoing, Barringer's Amended Motion for Partial Summary Judgment (doc. #35) should be DENIED.  Further, Barringer's claims for common law negligence against Deputy Davis and the County should be DISMISSED.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **December 7, 2010**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the

objections are filed and the review of the Findings and Recommendation will go under advisement

on that date.

DATED this 22nd day of November 2010.


_____/s/John V. Acosta_____
JOHN V. ACOSTA
UNITED STATES MAGISTRATE JUDGE